# EXHIBIT 1

IN THE CIRCUIT COURT OF THE
FIRST JUDICIAL CIRCUIT, IN AND
SANTA ROSA COUNTY, FLORIDA

**SHAMAR MORRISON,**

CASE NO.: 21-CA-
FLA BAR NO.: 0739685

**Plaintiff,**

v.

**NAVY FEDERAL CREDIT UNION,**

**Defendant.**

_____/

## COMPLAINT

Plaintiff, SHAMAR MORRISON hereby sues Defendant, NAVY FEDERAL CREDIT UNION and alleges:

### NATURE OF THE ACTION

1. This is an action brought under and Chapter 760, Florida Statutes.

2. This action involves claims which are, individually, in excess of Thirty Thousand Dollars ($30,000.00), exclusive of costs and interest.

### THE PARTIES

3. At all times pertinent hereto, Plaintiff, SHAMAR MORRISON, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to his actual or perceived disability and/or record of impairment, and he was retaliated against after reporting Defendant's unlawful employment practices. Moreover, Plaintiff was subject to retaliation after engaging in protected speech.

4. At all times pertinent hereto, Defendant, NAVY FEDERAL CREDIT UNION, has been organized and existing under the laws of the State of Florida. At all times pertinent to this

action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.     Plaintiff has satisfied all conditions precedent to bringing this action in that Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations and Equal Employment Opportunity Commission. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6.     Plaintiff began his employment with Defendant on or about March 10, 2007, as a Collections Representative, and held the title of Mortgage Processor at the time of his constructive/actual termination on July 13, 2018.

7.     Despite his stellar work performance during his employment with Defendant, Plaintiff has been subjected to disparate treatment, different terms and conditions of employment, and was held to a different standard because of his actual or perceived disability and/or record of impairment, and because he reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8.     The disparate treatment and retaliation came at the hands of specifically but not limited to Supervisor Stacy Graham, Manager John Carney, and Assistant Manager Wade Parker.

9.     In April 2017, Plaintiff suffered a serious injury to his left quadricep and was scheduled for surgery on April 3, 2017. Plaintiff went on approved leave under the Family and Medical Leave Act beginning April 3, 2017.

10.    During Plaintiff's short-term leave, Defendant Supervisor Gail Anderson persistently called Plaintiff telling him to come back to work disregarding the fact Plaintiff's

physician had not cleared him. Per typical protocol within the Defendant, Plaintiff's coworkers assisted him with his job duties while he was out. However, Supervisor Stacy Graham instructed said co-workers to stop assisting Plaintiff.

11. Around August 2017, Defendant's disparate treatment of Plaintiff continued with the persistent phone calls to Plaintiff telling him to return to work.

12. In August 2017, Plaintiff's rehabilitation program went down from 3 times a week to 2 times a week. Plaintiff thereafter sought to return to work but requested that Defendant flex his schedule in order for Plaintiff to attend his rehabilitation program. Graham approved Plaintiff for a flex schedule.

13. Based on Graham's statement regarding flexing Plaintiff's schedule, Plaintiff returned to work in August 2017.

14. Upon arriving at work, Graham ignored Plaintiff. Plaintiff logged into his work station and noticed the majority of his high paying balance accounts were reassigned to Mike Keller Jr., who is not disabled. Plaintiff also noticed none of his job duties had been attended to in his absence.

15. Plaintiff then asked Keller how he came into possession of Plaintiff's accounts and Keller stated Graham, Carney, and Parker emailed Keller Plaintiff's spreadsheet and told Keller to take any account he wanted.

16. Plaintiff then requested a meeting with Graham to discuss what transpired in Plaintiff's absence. During this meeting, Graham told Plaintiff his schedule would not be flexed and he must use his own personal leave for his rehabilitation program. Graham was aware Plaintiff did not have any leave available. When Plaintiff opposed this treatment to Graham, she laughed in his face. She also told him not to tell anyone about the meeting that had just occurred.

17. Plaintiff left Graham's office and reported this mistreatment to Defendant's Human Resources department. He stated that he did not feel safe working under Graham any longer after what had just transpired. Defendant's Human Resources department interviewed him about this mistreatment, but took no corrective action. Graham remained Plaintiff's supervisor.

18. Defendant made it impossible for Plaintiff to meet monthly goals because Defendant gave away his most productive accounts to his non-disabled co-worker Keller. This mistreatment combined with Defendant denying him the request for a reasonable accommodation of flexing his hours made it apparent to Plaintiff that Defendant was setting him up for termination.

19. Plaintiff applied for numerous positions in other departments in the Lending/Collections Department, specifically and without limitation Securities Fraud Specialist on August 22, 2017, Recovery Recon Specialist on August 31, 2017, Business Operations Specialist on September 6, 2017, and Loan Protections Claims Processor September 27, 2017, all positions for which he was qualified. Despite his qualifications, Defendant denied him interviews for any of these positions.

20. Furthermore, Plaintiff's former supervisor, Albert Abbey, told him in or about October 2017, that he must have been blacklisted from any position in the Lendings/Collections Department since he did not receive any interviews.

21. Plaintiff reported this mistreatment in a complaint to the Equal Employment Opportunity Commission on or around October 2017, against Graham, Carney, and Parker alleging disparate treatment based on Plaintiff's disability.

22. Defendant retaliated against Plaintiff for reporting this mistreatment specifically and without limitation frequently and consistently writing him up and counseling him for

frivolous reasons, specifically and without limitation coming in to work a few minutes late which other employees did with immunity.

23. Furthermore, Defendant began monitoring Plaintiff's movements. By way of example, Plaintiff's supervisor waited at Plaintiff's desk in the mornings for him to arrive. Defendant's mistreatment of Plaintiff caused him extreme anxiety and stress which exacerbated his medical condition.

24. Despite Plaintiff's clarity and insistence in communicating his need for accommodations, Defendant failed to grant his requests. Instead, Defendant continued to issue Plaintiff write-ups for issues which were directly impacted by the failure of Defendant to take appropriate and adequate action on behalf of Plaintiff to accommodate him. Plaintiff was continually mistreated and retaliated against, which eventually resulted in Plaintiff's constructive termination on July 13, 2018. No reasonable person would have remained in this work environment especially in light of the fact that Plaintiff's medical condition was worsening due to the actions of the Defendant.

25. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## DISABILITY DISCRIMINATION

26. Paragraphs 1 through 25 are realleged and incorporated herein by reference.

27. This is an action against Defendant for disability discrimination brought under Chapter 760, Florida Statutes.

5

28. Plaintiff has been the victim of discrimination on the basis of his disability or perceived disability. During the course of Plaintiff's employment with Defendant, he was treated differently than similarly situated nondisabled/perceived-as-disabled employees.

29. Defendant is liable for the differential treatment and its refusal to accommodate and engage in the interactive process with Plaintiff, which adversely affected the terms and conditions of Plaintiff's employment with Defendant. Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

30. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were disability/perceived-disability based and in violation of the laws set forth herein.

31. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's constructive termination.

32. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon disability or perceived disability or his record of having an impairment.

33. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These

damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief and to punitive damages.

## COUNT II
## RETALIATION – CHAPTER 760

34. Paragraphs 1 through 25 are realleged and incorporated herein by reference.

35. Defendant is an employer as that term is used under the applicable statutes referenced above.

36. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes.

37. The foregoing unlawful actions by Defendant were purposeful.

38. Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

39. Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter, including specifically and without limitation his constructive termination.

40. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to punitive damages and to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a) that process issue and this Court take jurisdiction over this case;

(b) that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c) enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d) enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e) enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f) award Plaintiff interest where appropriate; and

(g) grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 18th day of January 2021.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
Michelle2@mattoxlaw.com
marlene@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF